E-FILED
Tuesday, 14 July, 2020  09:37:47 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

FILED

JAN 2 9 2020

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN P. TOMKINS,<br>　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES BUREAU OF<br>　PRISONS,<br><br>HUGH J. HURWITZ,<br>　Acting Director of B.O.P.,<br><br>JEFFERY E. KRUEGER,<br>　North Central Regional<br>　Director of B.O.P.,<br><br>FREDRICK ENTZEL,<br>　Warden, FCI-Pekin,<br><br>STEVEN KALLIS,<br>　Former Warden, FCI-Pekin,<br><br>ANDREW LAMIRAND,<br>　Director of Education,<br>　FCI-Pekin,<br>　　　Defendants. | Case No. 1:19-cv-01304-SEM<br><br>AMENDED COMPLAINT SEEKING A<br>WRIT OF MANDAMUS AND/OR FOR<br>INJUNCTIVE, DECLARATORY AND<br>MONETARY RELIEF |

The pro se plaintiff, John P. Tomkins, a prisoner in the custody of the United States Bureau of Prisons (BOP) and currently housed at the federal correctional institution located in Pekin, Illinois (FCI-Pekin) hereby initiates this suit seeking a writ of mandamus compelling the defendants to abide by the plain language of Title 28, Section 544.100 of the Code of Federal Regulations (C.F.R.) pursuant to 28 U.S.C. § 1361.

The plaintiff also seeks injunctive, declaratory and monetary relief for the defendants' knowing and intentional violation of the plaintiff's constitutional, statutory, and civil rights pursuant to 42 U.S.C. § 1983, as made applicable in this case by **Bivens v.**

(1.)

Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); the Religious Land Use and Institutional Persons Act (RLUIPA), 42 U.S.C. § 2000cc, et seq.; and the Administrative Procedures Act, 5 U.S.C. § 701, et seq.

I.) PARTIES

    A.) PLAINTIFF: John P. Tomkins #19421-424
                Federal Correctional Institution
                P.O. Box 5000
                Pekin, Illinois 61555-5000

    B.) DEFENDANTS

        Defendant #1: United States Bureau of Prisons
                Office of General Counsel
                320 First Street, N.W.
                Washington, D.C. 20534

        Defendant #2: Hugh J. Hurwitz
                Acting Director of BOP
                320 First Stree, N.W.
                Washington, D.C. 20534

        Defendant #3: Jeffery E. Krueger
                North Central Director of BOP
                400 State Avenue
                Kansas City, Kansas 66101

        Defendant #4: Fredrick Entzel
                Warden of FCI-Pekin
                2600 South Second Street
                P.O. Box 7000
                Pekin, Illinois 61555-7000

        Defendant #5: Steven Kallis
                Former Warden of FCI-Pekin
                2110 East Center Street  P.O. Box 4600
                Rochester, Minnesota

        Defendant #6: Andrew Lamirand
                Supervisor of Education at FCI-Pekin
                2600 South Second Street
                P.O. Box 7000
                Pekin, Illinois 61555-7000

(2.)

II.) STATEMENT OF THE CASE

On December 17, 2018, the plaintiff submitted an electronic request of staff addressed to Defendant #6, Andrew Lamirand, the Supervisor of Education at FCI-Pekin. See Appendix at pg. 1. The submission questioned why the inmate library hours of operation at FCI-Pekin were not in compliance with 28 C.F.R. § 544.100, which mandates, "Library services shall ordinarily be available to all inmates daily, including evenings and weekends[.]"

Defendant Lamirand responded, "The library is to be open for 8 hours total over the weekend and at least 3 hours daily during the weekday." Id. Thus, in Mr. Lamirand's opinion, the hours comply with § 544.100's mandate despite the fact that the library is closed on Friday evenings and all day on Sundays. See Appendix at pg. 11.

Dissatisfied with this reponse, the plaintiff initiated the BOP's administrative remedy process by filing an Attempt at Informal Resolution (BP-8) seeking to have the library's hours brought into compliance with § 544.100. See Appendix at pg. 2. Following the filing of the BP-8, Mr. Lamirand met with the plaintiff in an attempt to informally resolve the BP-8. At the conclusion of this meeting, Mr. Lamirand agreed to explore "the feasability of adding an ELL [electronic law library] computer to each [housing] unit" in exchange for the plaintiff's withdrawl of the BP-8. Id.

On February 4, 2009, Mr. Lamirand posted a Memorandum for Institutional Staff and Inmate Population FCI-Pekin, Illinois. Appendix at pg. 11-12. The notice indicated that the library hours at FCI-Pekin would be reduced effective February 25, 2019. Id. at pg. 3.

(3.)

Frustrated by Mr. Lamirand's disregard for his prior agreement with the plaintiff, the plaintiff once again initiated the BOP's administrative remedy process by filing a new BP-8 challenging FCI-Pekin's refusal to abide by § 544.100, which Mr. Lamirand denied. Appendix at pg. 4.

The plaintiff then filed a formal administrative remedy request with then warden of FCI-Pekin, Steven Kallis, Defendant #5. Warden Kallis denied the BP-9 by citing BOP Program Statement 1315.07, which deals with inmate legal activities and is governed by 28 C.F.R. § 544.11. Warden Kallis did not address or even acknowledge the existence of § 544.100. Appendix at pg. 5. It was and is the warden's responsibility to answer inmate complaints that cannot be informally resolved. Included within that responsibility is the warden's obligation to ensure that his or her institution is in compliance with all applicable laws and regulations. The warden is also charged with monitoring the actions of his or her subordinates to make certain they discharge their duties in a lawful manner. When a warden is made aware of illegal conduct by his or her staff and affirmatively elects to allow the improper behavior to continue, the warden becomes equally liable for the violation of the duly enacted regulation.

The plaintiff filed a timely appeal of the denial of the BP-9 with the North Central Regional Director, Jeffery E. Krueger, Defendant #3, in the form of a BP-10. Appendix at pg. 7. Regional Director Krueger, like Warden Kallis, made the affirmative decision to ignore the plain language of § 544.100. Specifically, the response to the BP-10 states, "A review of FCI-Pekin's Leisure and Law

(4.)

Library hours revealed it is open for a time commensurate with policy." (emphasis added) Appendix at pg. 6. The response equivocates further by stating, "your Regional Administrative Remedy Appeal is for informational purposes only." Id. Thus, the BP-10 implicitily acknowledges that the FCI-Pekin library hours of operation do not comply with § 544.100.

This led the plaintiff to appeal the BP-10 to then Acting Director of the BOP, Hugh J. Hurwitz, Defendant #2, in the form of a BP-11. Appendix at pg. 9. The plaintiff again asserted the hours of operation of the inmate library at FCI-Pekin violated the plain language of § 544.100, a duly enacted federal regulation. Appendix at pg. 9. Like the response to the BP-10, the response to the BP-11 stated it was "for informational purposes only." Appendix at pg. 10. The response went on to state, "The library hours of operation at FMC Lexington (sic) meet the minimum hours required by policy." (emphasis added)(citing Program Statement 1542.06). The BP-11 response ignores the very existence of § 544.100. Thus, Director Hurwitz made the affirmative decision to allow the library at FCI-Pekin to operate in direct violation of § 544.100.

III.) CLAIMS

    A.) WRIT OF MANDAMUS

        1.) LEGAL AUTHORITY

"District courts have the authority to issue a writ of mandamus to compel an agency to perform a duty owed to a plaintiff. 28 U.S.C. § 1361. Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present:

(5.)

(1) a clear right to the relief sought, (2) the defendant has a duty to do the act in question, and (3) no other adequate remedy is available." Calderon-Ramirez v. McCament, 877 F.3d 272, 275 (7th Cir. 2017)(internal quotation marks omitted).

2.) BASIS FOR GRANTING THE WRIT

"It is, of course, well settled that validly issued administrative regulations have the force and effect of law." Roadway v. Dept. of Ag., 514 F.3d 809, 814 (D.C. Cir. 1975)(collecting Supreme Court precedent); Sims v. Heckler, 725 F.2d 1143, 1146 (7th Cir. 1984)(holding duly enacted regulations "have the force and effect of law"). See also, Bigbee v. United States, 359 F.Supp.2d 806, 810 (W.D. Wisc. 2005)(holding "Inmates have the right to expect prison officials to follow Bureau of Prisons' procedures." (citing Caldwell v. Miller, 790 F.2d 589, 610 (7th Cir. 1986)).

"The Bureau of Prisons provides inmates within each of its institutions with library services necessary for educational, cultural, and leisure activities...Library services shall ordinarily be available to all inmates daily, including evenings and weekends." 28 C.F.R. § 544.100.

It is hard to find a federal regulation that is more succinct or easier to understand than § 544.100. "Library services **shall** ordinarily be available to **all** inmates **daily, inculding** evenings and weekends." (emphasis added). The inmate library at FCI-Pekin is **never** available to **any** inmate on Friday evenings or at any time on Sundays because **the library is closed.** Appendix at pg. 11.

(6.)

The BOP's flagrant disregard for the Code of Federal Regulations is disturbing. It would have been one thing if the BOP had corrected its error once the deficiency was highlighted. The BOP could conceivably have argued the violation was an inadvertent oversight. That did not happen in this case. Instead, throughout every step of the administrative remedy process, the BOP has made the affirmative decision to ignore the Code of Federal Regulations.

It bears repeating, "Library services **shall** ordinarily be available to all inmates daily, including evenings and weekends." (emphasis added) § 544.100. When "shall" is used in this Chapter of the C.F.R., "Shall means an obligation is imposed." 28 C.F.R. § 500.1(e). Thus, "the defendant has a duty to do the act in question," McCament, supra.

> "In a government of laws, existence of the government will be imperilled if it fails to observe the law. Our government is the potent, omnipresent teacher. For good or for ill, it teaches the whole people by its example." Olmstead v. United States, 72 L.Ed.2d 944, 960, 277 U.S. 438 (1928)(Brandeis, J., dissenting opinion).

In this instance, the very government that is tasked with "rehabilitating" individuals that have broken laws and regulations has put itself above those same regulations. This is a horrible "example" for the BOP to be teaching.

Because the plaintiff has exhausted the administrative remedy process without the BOP agreeing to bring the library hours of operation at FCI-Pekin in compliance with § 544.100's mandate, "no other adequate remedy is available." McCament, supra. As such, the Court has a duty to exercise its oversight responsibility and order the BOP to comply with § 544.100 by issuing a writ of mandamus.

(7.)

B.) BIVENS CLAIMS

1.) INJUNCTIVE RELIEF

a.) LEGAL AUTHORITY

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." **Winter v. NRDC, Inc.** 555 U.S. 7, 20 (2008). See also, Fed. R. Civ. P. 65(b).

b.) BASIS FOR GRANTING PRELIMINARY INJUNCTION

i.) LIKELY TO SUCCEED ON THE MERITS

As discussed above, the Code of Federal Regulations (1) carry the force and effect of law, and (2) are unambiguous and not subject to interpretation in this case. Unless § 544.100 is legally amended, the inmate library at FCI-Pekin must "be available to all inmates daily, including evenings and weekends." Id.

"An agency may not interpret its regulations in a manner so as to nullify the effective intent or wording of a regulation." **Joseph v. Holder,** 579 F.3d 827, 833 (7th Cir. 2009)(quoting **Bahramizadeh v. INS,** 717 F.2d 1170, 1173 (1983)).

In the approximately six years that the plaintiff has been at FCI-Pekin the library has **never been open on Friday evenings** or at any time on Sundays for any reason.

ii.) IRREPARABLE HARM

Educational activities are an extremely important tool in preventing recidivism. As such, the library is a vital resource in the plaintiff's attempt to utilize his time while he remains in

(8.)

custody in a manner that will help him grow intellectually and prevent him from repeating his past mistakes.

Further, the library is the only place where the plaintiff has access to reference books, typewriters and photocopiers. These resources are essential for the plaintiff's ability to complete his college education by participating in distance education programs. A formal education is indispensable if the plaintiff is to successfully return to society.

The library also offers inmates with the opportunity to participate in Adult Continuing Education (ACE) classes. These classes are taught through video presentation by professional educators or by inmates with special skills or knowledge. **These classes are available only in the library.** If the library is closed, as it is on Friday evenings and on Sundays, the classes cannot be offered. In addition to providing a needed learning opportunity, participation in ACE classes constitutes "programming" for security custody classification puposes. Therefore, the BOP is artificially increasing an inmate's custody classification points by limiting access to educational programming.

Another important function of the library is to promote "cultural" activities. This includes providing newspapers and magazines for the plaintiff and approximately 1,000 other inmates to share. The library also allows the plaintiff and the other inmates to get together to exchange views on current affairs including politics, religion, and personal experiences. Social interaction is critical to the plaintiff's mental health.

(10.)
9.

Finally, the library is to be a source of "leisure" activities. For the plaintiff, this includes reading and just relaxing a little. The relative quiet of the library is a welcome reprieve. Having a place where the plaintiff does not have to constantly be on guard is an invaluable leisure activity.

### iii.) BALANCE OF EQUITIES/PUBLIC INTEREST

In deciding the balance of equities, the Court "explores the relative harms to the plaintiff and defendant as well as the interest of the public at large." City of Chicago v. Sessions, 888 F.3d 272, 289 (7th Cir. 2018).

As discussed in Section III(B)(1)(b)(ii), the plaintiff, and "the public at large," i.e., the other inmates, continue to endure irreparable harm due to the defendants' unlawful conduct. The defendants, on the other hand, cannot be said to be harmed by doing what the regulation already requires them to be doing. As for the other "public at large," there is a vested interest in the BOP setting the proper example for the inmates that it houses. "If the government becomes a law-breaker, it breeds contempt for the law; it invites every man to become a law unto himself; it invites anarchy." Olmstead, supra.

Given that the plaintiff has satisfied each of the requirements for the issuance of a preliminary injunction, the plaintiff hereby moves the Honorable Court to issue an injunction preventing the defendants from continuing to ignore the plain language of 28 C.F.R. § 544.100.

### 2.) DECLARATORY JUDGMENT

#### a.) LEGAL AUTHORITY

"In a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

### b.) ANALYSIS

An actual controversy exists in this case and no other adequate remedy exists. Because § 544.100 mandates that "Library services shall ordinarily be available daily, including evenings and week-ends" is so definitive, and the defendants' actions so defenseless, the Court should exercise its authority under 28 U.S.C. § 2201(a) and enter a judgment in favor of the plaintiff.

### 3.) CONSTITUTIONAL VIOLATIONS

"[A] prisoner is not wholly stripped of constitutional protec-tions when he is imprisoned for a crime." Wolff v. McDonnell, 418 U.S. 539, 555 (1974).

### a.) FIRST AMENDMENT RIGHTS

#### i.) PEACEFUL ASSEMBLY/FREEDOM OF SPEACH.

As the plaintiff explained above, the library serves as a place where he and other inmates can peacefully assemble in order to communicate with each other. Considering this is the only place at FCI-Pekin where inmates from different housing units can get together and freely express their points of view, the defendant's refusal to allow access to the library in accord with § 544.100 constitutes a violation of the plaintiff's First Amendment rights.

#### ii.) FREEDOM OF RELIGION

"No government shall impose a substantial burden on the relig-

(11.)

ious exercise of a person residing in or confined to an institution...even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." **Rowe v. Davis**, 373 F.Supp.2d 822, 825 (N.D. Ind. 2005)(citing the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, et seq.)

Under the RLUIPA, religious exercise is defined to "include any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). *See Addendum for the balance of this claim.*

iii.) ACCESS TO THE COURT

"It is well-established that inmates have a fundamental constitutional right of access to the courts...To prove a violation of the right of access to the courts, an inmate must show (1) the failure of the prison officials to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in ths law, and (2) some quantum of detriment caused by the challenged conduct of state officials resulting in the interuption and/or delay of the plaintiff's pending or contemplated litigation. The showing of detriment is waived, however, where the inmate alleges a direct, substantial and continuous, rather than a minor or indirect limit on legal materials." Alston v. Debruyn, 13 F.3d 1036, 1040-41 (7th Cir. 1994)(internal citations and quotation marks omitted, emphasis added).

(12.)

FCI-Pekin does not provide any "assistance from persons trained in the law" Id. Therefore, adequate access to a law library is required.

FCI-Pekin has twelve(12) electronic law library (ELL) computer terminals for use by the approximately 1,000 inmates. In June 2013 when the plaintiff arrived at FCI-Pekin these ELL terminals were ordinarily available to the inmate population for a total of 52 hours per week. See Appendix at pg. 13. This equates to a total of 624 ELL hours of availability (12 terminals x 52 hours). With an inmate population of approximately 1,000, this comes to approximately 37 minutes per inmate per week.

Today, FCI-Pekin still has the same 12 ELL terminals, however, they are now available for only 42 hours per week, or a total of 504 hours per week. This equates to approximately 30 minutes of ELL access per week per inmate. A 19% decrease to an already inadequate access to a law library. This is a "direct, substantial and continuous" denial of access to legal materials. Alston, supra.

Considering the plaintiff works during the daytime, his only access to the library is in the evenings and on the weekends, which is probably why "Library services shall ordinarily be available to all inmates daily, including evenings and weekends." By denying access to the library on Sundays, FCI-Pekin has caused unnecessary "interuption and/or delay of the plaintiff's pending or contemplated litigation." Alston, supra.

As a result of this limitation, the plaintiff's litigation in this case was "dismissed" because in the Court's opinion the original complaint "fail[ed] to state a claim" R. 6 at 6. Thankfully,

the Court did, as it must under binding precedent, grant plaintiff leave to "file an amended complain by February 7, 2020." Id. The Court went on to inform the plaintiff if the "amended complaint still fails to state a claim, then this action will be dismissed for failure to state a claim and a strike will be assessed against the Plaintiff pursuant to 28 U.S.C. § 1915(g)." Id. Not only does the leveling of a "strike" count as a significant detriment, the plaintiff will also be out the $400.00 filing and administrative fee that he has paid to bring this suit simply because he could not meet the Court's filing requirements due to the FCI-Pekin's illegal limitation on access to the library. A vicious circle. The plaintiff cannot force FCI-Pekin to comply with § 544.100 without access to the library, but the plaintiff has not been able to meet the Court's filing requirements because he does not have access to the library.

Further, this is not the only legal proceeding the plaintiff has pending at this time. See **John P. Tomkins v. United States of America**, case no. 16-cv-7073 (N.D. IL.)(28 U.S.C. § 2255 motion challenging the constitutionality of the plaintiff's conviction, which has been ongoing for approximately 3½ YEARS) and **USA v. 2067 Grant Street, Dubuque, Iowa 52002**, case no. 07mj00090 (N.D. IA.) (plaintiff's motion for the return of seized property, which has been ongoing for over a year). Certainly, these cases would have been resolved in a more expedicious manner if the plaintiff could have presented his pleadings in a more timely and expertly prepared manner. Thus, the lack of access to the library is a detriment to the plaintiff's First Amendment right to access the Court.

( 16 . )

14

While the next example may not be a direct detriment to the plaintiff, it serves as potent reminder of exactly why access to an adequate law library is critical to the efficient administration of the federal criminal justice system.

As the Court may recall because thsi Court presided over this particular case, **United States v. Robert Hern**, case no. the Court appointed counsel to represent MR. Hern after Congress passed the First Step Act, which made the Fair Sentencing Act retroactive. Unfortunately, court appointed counsel did not believe that Mr. Hern was eligible for a reduction of his sentence. While Mr. Hern begged counsel to file the motion anyhow, counsel continued to stall. After several months and numerous requests, Mr. Hern sought the plaintiff's assistance in filing the motion pro se. Due to the limited access to the ELL computers and the library in general, the plaintiff was finally able to draft the motion several weeks later, which Mr. Hern then signed and submitted to the Court. The Court subsequently granted the motion and ordered Mr. Hern's <u>immediate release</u>.

Simply because an inmate may be represented by counsel does not alleviate an inmate's need for adequate access to legal materials. The extra months that Mr. Hern spent in prison is months that he will never be able to get back.

And, to be fair to Court appointed attorneys, it is not just court appointed counsel that can make mistakes. The plaintiff is responsible for the pro se motion that inmate Timothy Grahl filed in **United States of America v. Timothy Grahl**, case no. (S.D. IL.).

( 3&0;. )

Unlike Mr. Hern, Mr. Grahl had retained counsel. Following the passage of the "Drugs Minus Two" amendment to the U.S. Sentencing Guidelines, Amendment 782, Mr. Grahl asked counsel to file a motion on his behalf. Counsel refused claiming that Mr. Grahl was not eligible because his sentence had been imposed under Federal Rule of Criminal Procedure 11(c)(1)(C). Again, the plaintiff's assistance was sought. Again, several weeks passed while the plaitiff did the necessary research and prepared the motion. Again, the Court granted the motion and reduced Mr. Grahl's sentence by 17 months in this instance.

This begs the question, how many more inmates are serving unwarranted sentences simply because FCI-Pekin, and possibly other BOP facilities, are refusing to comply with the plain language of 28 C.F.R. § 544.100?

iv.) FIFTH AMENDMTENT DUE PROCESS VIOLATION

When the BOP enacted 28 C.F.R. § 544.100 a "liberty interest" was granted to the general inmate population. "[I]f the state decides to recognize such a liberty – a liberty that is artificial, therefore, rather than natural – does he have a right that he can enforce under the due process clause." Smith v. Shettle, 946 F.2d 1250, 1252 (7th Cir. 1991).

Because the defendants are aware of their obligations under § 544.100, and have knowingly refused to provide the "liberty interest" that the plaintiff is entitled to, the defendants are liable for damages under the Fifth Amendment's Due Process Clause.

"The rule is well settled that where the law requires absolutely a ministerial act to be done by a public officer, and he neglects

( 17 .)

16

or refuses to do such an act, he may be compelled to respond in damages." Amy v. Supervisors, 78 U.S. 136, 138, 20 L.Ed. 101 (1871).

### v.) EIGHTH AMENDMENT VIOLATION

If the condition of confinement being challenged "is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the government is punishment." Bell v. Wolfish, 441 U.S. 520, 539 (1979). Likewise, "Forcing a prisoner to choose between using the prison law library and exercising outdoors is impermissable because 'an inmate cannot be forced to sacrfice one constitutionally protected right solely because another is respected.'" Hebbe v. Pliler, 627 F.3d 338, 343 (9th Cir. 2010).

FCI-Pekin's knowing and intentional limitation on access to library services constitutes an Eighth Amendment violation as the plaintiff is forced to choose between constitutionally protected activities. There can be no "legitimate goal" in denying inmates of "educational, cultural, and leisure activities." § 544.100.

### 4.) RETALIATION

### A.) LEGAL STANDARD

"[A]n act inretaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." Bridges v. Gilbert, 557 F.3d 541, 552 (7th Cir. 2009)(citing Howard v. Kilquist, 833 F.2d 639, 644 (7th Cir. 1987)).

"All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002).

(18.)

"If a prisoner is transferred for exercising his own right of access to the courts, or for assisting others in exercising their right of access to the courts, he has a claim under § 1983." Higgason v. Farley, 83 F.3d 807, 810 (7th Cir. 1996).

### b.) BASIS OF CLAIM

#### i.) REDUCTION OF LIBRARY HOURS

Following the plaintiff's initial complaint about the hours of operation of the FCI-Pekin library, Defendant Lamirand stated in writing that he would explore "the feasability of adding an ELL computer to each [housing] unit" to provide additional access to that library service. Appendix at pg. 2.

It is unknown whether Defendant Lamirand followed through with this agreement, but what is known is the ELL computers were not added to the housing units **and** access to the library, including the ELL computers, was **reduced** shortly after the plaintiff com- plained about the library hours not complying with § 544.100 in apparent retaliation.

#### ii.) PLAINTIFF'S TRANSFER

As the plaintiff notified the Court in Plaitiff's Emergency Motion for a Court Order Staying the Plaintiff's Potential Transfer to a Bureau of Prisons Facility Outside the Court's Jurisdiction, R.___, two days after the Court granted the plaintiff leave to file an amended complaint in this case, the plaitiff was told that he was going to be transferred to another institution.

When the plaintiff requested that his transfer not occur until this suit was resolved, the plaintiff was told "that is not going to happen" by Case Manager Ms. Garrett. When the plaintiff complained

(18.)

that the case may be dismissed due to the transfer, Ms. Garrett stated, "exactly." The clear implication is the plaintiff is being transferred in retaliation for filing this lawsuit and assisting other inmates with their attempts at post-conviction remedies. See, Section III(B)(3)(a)(iii), pg. 16, supra.

5.) ADMINISTRATIVE PROCEDURES ACT

a.) LEGAL STANDARD

"The tort claims act doesn't authorize equitable relief. 28 U.S.C. § 1346(b)(1); But the Administrative Procedure Act does, 5 U.S.C. § 702; the **federal Bureau of Prisons is subject to that act;** and so federal inmates can in principle invoke the APA to obatin an order" for equitable relief. Robinson **v.** Sherrod, 631 F.3d 839, 841 (7th Cir. 2011). See also, **Bigbee v. United States Federal Bureau of Prisons,** 359 F.Supp.2d 806, 810 (W.D. Wisc. 2005)("Congress has waived the sovereign immunity of the United States with respect to claims based on an agency's violation of its own regulation, but only as to claims seeking injunctive or declaratory relief. The waiver does not apply to claims seeking money damages.")

b.) ANALYSIS

While the APA may not be applicable for the monetary damages the plaintiff is seeking, it is applicable for the injunctive and declaratory relief that the plaintiff is seeking in this case. See Section III(B)(1) and (2), respectively. As such, the plaintiff hereby invokes the APA and asks the Court to exercise its authority thereunder and order FCI-Pekin to immediately begin opening the inmate library to be open to "all inmates daily, including evenings and weekends," as required by 28 C.F.R. § 544.100.

( 20. )

IV.) PRAYER FOR RELIEF

A.) The plaintiff seeks a writ of mandamus directing FCI-Pekin to immediately begin opening the inmate library on Friday evenings and on Sundays in accord with 28 C.F.R. § 544.100.

B.) The plaintiff seeks preliminary and permanent injunctive relief in the form of a declaratory judgment finding FCI-Pekin is not operating the inmate library in compliance with the plain language of 28 C.F.R. § 544.100.

C.) The plaintiff is seeking compensatory damages from the defendants individually and collectively in their personal and professional capacities for their knowing and intentional violation of the plaintiff's constitutional, statutory and civil rights.

D.) The plaintiff seeks punitive damages from the defendants individually and collectively for their arbitrary and capricious actions in the amount of $500.00 for each Sunday and $250.00 for each Friday evening that the FCI-Pekin library has been unlawfully closed beginning with the plaintiff's initial complaint on December 17, 2018 and concluding when the library hours of operation are brought into compliance with 28 C.F.R. § 544.100.

E.) The plaintiff seeks tha actual costs associated with bringing this suit. This includes, but is not limited to, filing fees, copy and printing costs, and postage.

F.) The plaintiff seeks any and all other relief the Court determines to be just and proper for the defendants' refusal to follow federal regulations.

(20.)

V.) CONCLUSION

If the plaintiff was challenging the defendants' compliance with BOP Program Statement 1315.07 or 1542.06 this case could be dismissed as frivolous. However, the plaintiff is not, and never has, claimed the basis of this suit was FCI-Pekin's failure to abide by a Program Statement. The plaintiff's claim is, and has always been, FCI-Pekin is in violation ofTitle 28, Section 544.100 of the Code of Federal Regulations, which unequivocally command that "Library services shall ordinarily be available to all inmates daily, including evenings and weekends." Because **no** library services are available to any inmate on Friday evenings or at any time on Sundays because the library is **closed**, FCI-Pekin is violating the **regulation**.

Further, an agency may have discretion to reasonably interpret its regulations, this "must not be confused with the power to rewrite" unambiguous regulations. **Rhodes.v. Johnson**, 152 F.3d 785, 789 (7th Cir. 1998). Moreover, "Where the right of indiviuals are affected, it is incumbent upon agencies to follow their own proced- ures." **Morton v. Ruiz**, 415 U.S. 199, 235 (1974).

The regulation at issue in this case is unmistakeable, "Library services shall ordinarily be available to all inmates daily, inclu- ding evenings and weekends," and "Shall means an obligation is imposed." 28 C.F.R. § 544.100 and § 500.1(e), respectively. "An agency may not interpret its regulations in a manner so as to nullify the effective intent or wording of a regulation." **Joseph v. Holder**, 579 F.3d 827, 833 (7th Cir. 2009)(citing **Bahramizadeh v. INS**, 717 F.2d 1170, 1173 (7th Cir. 1983)).

Respectfully submitted this 27th day of January 2020 by:

John P. Tomkins #19421-424
Federal Correctional Institution
P.O. Box 5000
Pekin, Illinois 61555-5000


CERTIFICATE OF SERVICE

The pro se plaintiff, John P. Tomkins, hereby certifies under the
penalty of perjury that he will serve the above complaint on the
named defendants once the Court conducts its intial review in
accord with 28 U.S.C. 1915(g).

John P. Tomkins #19421-424
Federal Correctional Institution
P.O. Box 5000
Pekin, Illinois 61555-5000

(23.)

## ADDENDUM

In the rush to get this amended complaint finalized during the limited access to the library and before the plaintiff gets transferred to another institution, the plaintiff accidently omitted a portion of Section III(B)(3)(a)(ii) at pg. 12 of the complaint. Therefore, the plaintiff respectfully asks that this addendum be considered as if it was set forth fully therein.

Additionally, in proof reading the amended complaint, the plaintiff has noticed several spelling, grammatical and stylistic errors that he would normally have corrected before submitting this amended complaint for the Court's consideration. However, again due to the time constraints and lack of access to the library services on Friday evening and today (sunday), the plaintiff humbly asks the Court to overlook these errors, and for the necessity of having to hand-write this addendum.

## III. (B)(3)(a)(ii) RELIGIOUS FREEDOM - Continued from pg. 12

Unlike FCI-Pekin's chapel, the library is a place where inmates of different faiths can meet and discuss their respective beliefs in a relaxed, unstructured setting. The library also provides an opportunity for inmates, including the plaintiff, to engage in group and individual Bible study. This includes completing course material for a Bachelor's degree from International Christian College and Seminary, a fully accredited institution. Finally, the library provides the plaintiff a place to peacefully contemplate his faith. By refusing to provide the access that §544.100 mandates, the defendants are imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution" in violation of 42 U.S.C. § 2000cc et seq. See also, Turner v. Safley, 482 U.S. 78, 89 (1987) (A prison regulation that infringes on an inmate's First Amendment rights is valid only "if it is reasonably related to legitimate penological interests.") Denying library services during an institutional lockdown is a "legitimate penological interest," refusing to open the library every Friday evening and every Sunday is not.

APPENDIX

TRULINCS 19421424 - TOMKINS, JOHN P - Unit: PEK-C-A

---------------------------------------------------------------------------------------------------------

FROM: Education
TO: 19421424
SUBJECT: RE:***Inmate to Staff Message***
DATE: 12/20/2018 03:27:02 PM

The library is to be open for 8 hours total over the weekend and at least 3 hours daily during the weekday. There are times where the library is not open due to staff coverage issues, holiday schedules, lock-downs, etc. We do our best to minimize these occurrences. A sampling of library materials can be found in the health awareness room in recreation and can be utilized by inmates when the library is unavailable.

>>> ~^!"TOMKINS, ~^!JOHN P" <19421424@inmatemessage.com> 12/17/2018 7:12 PM >>>
To:
Inmate Work Assignment: Commissary

I was told by staff today that the library will be closed for the next two Saturdays. Is this correct? Also, if I am reading the Program Statement that deals with the operation of the library correctly, it appears closing the library on Saturdays is in direct conflict with P.S. 1542.06(5)(a) which states "The library shall be open for a minimum of three hours daily and eight hours over weekends." Indeed, the Program Statement could be understood to mean that the library must be open for at least three hours everyday including Saturdays and Sundays. Could you please let me know if I am reading the Program Statement correctly. and if so what actions are being taken to bring the library's hours of operation into compliance with the Program Statement's mandate.
Thank you,
John Tomkins

APPENDIX Pg. 1

*165*

*IA #1*

Administrative Remedies
PEK 1330.16
December 7, 2009
Attachment A

## *EDUCATION*

### ATTEMPT AT INFORMAL RESOLUTION
(Request for Administrative Remedy)

Federal Bureau of Prisons Program Statement 1330.16, Administrative Remedy Program, dated December 31, 2007, requires that inmates shall informally present their complaint to staff and staff attempt to informally resolve any issue before an inmate files a Request for Administrative Remedy BP-229(13.) If an informal resolution cannot be met, the inmate will be given a BP-229(13) form.

Name: _John P. Tomkins_   Reg No: _19421-424_   Date: _12/31/18_

**TO BE COMPLETED BY INMATE:**

1. State Nature of Problem: _The inmate library is violating Program Statement 1542.06. First, the library is scheduled to be closed from Friday 12/21/18 to Wednesday 12/26/18 & again from Friday 12/28/18 to Wednesday 01/04/19 (although no official notification of the scheduled closures has been made). Per P.S. 1542.06 (5)(a) "The library shall be open for a minimum of three hours daily and eight hours over weekends." Second, P.S. 1542.06 (0) states "Library services shall ordinarily be available to all inmates daily, including evenings and weekends." The library is never open on Sundays, as required by policy._

2. State what action or resolution expected. Be specific: _Bring the library's hours of operation into compliance with policy or install an additional electronic law library computer on the housing units._

**TO BE COMPLETED BY STAFF:**

Date and Time Investigation Completed by responsible Department: _____

3. Summary of investigation: _The library is open 8 hours on the weekend and 9 hours every weekday. This meets policy. There are times when the library is closed due to staff coverage issues, Federal Holidays, lockdowns, etc. I will ask the Trust Fund Supervisor about the feasibility of adding an ELL computer to each unit._

Signature of Investigating Staff Member: _____   _10:30AM_

Date and Time BP8 Issued: _12/1/18   3p_   Unit Team: _T. Hinman_
Date & Time Inmate Returned: _12/1/18   3:30p_   Unit Team: _T. Hinman_
Date and Time BP-229(13) issued: _____
Unit Manager's Signature: _____

Distribution:   (1)   If complaint is informally resolved, forward original, signed below and dated by inmate, to the Unit Team for filing.
(2)   If complaint is not informally resolved, forward original (attached to BP-229(13) form) to the Administrative Remedy Coordinator.

On _____, this issue was informally resolved.   _____   _____
     (date)                                               Inmate Signature        Date

                                                          _____   _____
                                                          Staff Signature         Date

_Received from Counselor Hinman
On 01/09/19 @ 13:22_

APPENDIX Pg. 2

Administrative Remedies
PEK 1330.16
December 7, 2009
Attachment B

## FCI PEKIN
### DEPARTMENT HEAD DOCUMENTATION-ATTEMPT AT INFORMAL RESOLUTION

REMEDY # _9CS012-F1_

Inmate's Name: _Tomkins, J_        Reg No: _19421-424_ Housing Unit _Iowa-1_

**TO BE COMPLETED BY THE DEPARTMENT HEAD ASSIGNED A BP-9:**

1. Briefly state the inmate's complaint and requested corrective actions: _FCI Pekin's library hours do not comply with policy. Requested that the library be open on Sundays or Electronic Law Library Terminals be placed in the units._

2. Document your efforts to resolve the matter, to include policies reviewed: _Reviewed policy 1547.06. Inmate was told we (staff) will communicate to inmates in advance when closures may happen and that I would explore alternate places for ELL terminals. Complaint informally resolved._

3. Note any reasons an informal resolution could not be achieved: _None_

Department Head Name (printed): _A. Lamison_

Department Head Signature: _____  Date: _1-25-19_

If not informally resolved, forward this form with the BP-229 packet to the Admin Remedy Coordinator, along with your response. If informally resolved, have inmate sign and date the BP-229 form. Attach this form and return to the Administrative Remedy Coordinator.

_1/25/19_

APPENDIX Pg. 3

*181*

*EDUCATION*

Administrative Remedies
PEK 1330.16
December 7, 2009
Attachment A

## ATTEMPT AT INFORMAL RESOLUTION
(Request for Administrative Remedy)

Federal Bureau of Prisons Program Statement 1330.16, Administrative Remedy Program, dated December 31, 2007, requires that inmates shall informally present their complaint to staff and staff attempt to informally resolve any issue before an inmate files a Request for Administrative Remedy BP-229(13.)   If an informal resolution cannot be met, the inmate will be given a BP-229(13) form.

Name:__John P. Tomkins__    Reg No:_19421-424_ Date:_Feb. 7, 2019_

TO BE COMPLETED BY INMATE:

1.  State Nature of Problem:_ According to the Code of Federal Regulations "Library services shall ordinarily be available to all inmates daily, including evenings and weekends" 28 C.F.R. §544.100. See also Bureau of Prisons Program Statement 1542.06. The inmate library is never open on Friday night or anytime on Sundays. Thus, the library is in violation of these rules._

2.  State what action or resolution expected.  Be specific:_ Library services must be made available to all inmates on Friday nights and on Sundays._

TO BE COMPLETED BY STAFF:

Date and Time Investigation Completed by responsible Department:_____

3.  Summary of investigation:_____

Signature of Investigating Staff Member:  _____

Date and Time BP8 Issued_2-6-19 1:40PM_    Unit Team: _Carter_
Date & Time Inmate Returned:_____    Unit Team:_____
Date and Time BP-229(13) issued:_____
Unit Manager's Signature:_____

Distribution:    ___(1)    If complaint is informally resolved, forward original, signed below and dated by inmate, to the Unit Team for filing.
        (2)    If Complaint is not informally resolved, forward original (attached to BP-229(13) form) to the Administrative Remedy Coordinator.

On _____, this issue was informally resolved.  _____    _____
    (date)                            Inmate Signature        Date

APPENDIX Pg. 4    _____    _____
                Staff Signature        Date

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Tomkins John P. | 19421-424 | Iowa-1 | FCI-Pekin |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST** My previous Administrative Remedy raised two issues, see Exhibit 1. The first issue involved the library's extended closure before the 2018 Christmas/New Year holidays. That issue was informally resolved. The second issue was the library's failure to comply with the requirements of Title 28 of the Code of Federal Regulations §554.100 and BOP Program Statement 1542.06 concerning its hours of operation. This issue was discussed when I met with the Director of Education, Mr. Lamirand. While the matter was tentatively resolved when Mr. Lamirand affirmatively stated that we would explore options for expanding the availability of the Electronic Law Library computers. That settlement was voided when Mr. Lamirand reduced the number of hours that the library is open to the general inmate population, see Exhibit 2. Not only did this reduction violate the tentative resolution, it is also contrary to the 2019 edition of the FCI-Pekin A & O Handbook that was just updated and published to the inmate population, see Exhibit 3.
Regardless of any past discussions, the fact remains that BOP policy and the Code of Federal Regulations require the library to be open to the general population on Friday evenings and for a minimum of 3 hours on Sundays. A requirement the FCI-Pekin library continues to disregard. Therefore, I would ask that the library's hours be adjusted accordingly.

| DATE February 20, 2019 | SIGNATURE OF REQUESTER |
|---|---|

**Part B- RESPONSE**

| DATE | WARDEN OR REGIONAL DIRECTOR |
|---|---|

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

                                             CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

APPENDIX Pg. 5

SUBJECT: _____

| DATE | ☻ | RECIPIENT'S SIGNATURE (STAFF MEMBER) | BP-229(13) APRIL 1982 |
|---|---|---|---|

Part B – Response
Administrative Remedy #969087- F1

This is in response to your Request for Administrative Remedy dated February 20, 2019

in which you request that the library be open on Friday evenings and for three hours on

Sunday.

A review of this matter reveals that the Law Library hours were reduced and structured

education classes were scheduled in place of library hours. New library hours exceed

what is required by policy. Program Statement 1315.07 Legal Activities, Inmate, states

"The Warden shall make materials in the inmate law library available whenever

practical, including evening and weekend hours. This Program Statement also states,

"The Warden shall give special time allowance for research and preparation of

documents to an inmate who demonstrates a requirement to meet an imminent court

deadline. As such, an inmate may request extra access to the Law Library if they can

demonstrate a need to meet an imminent court deadline.

Therefore, this response to your Request for Administrative Remedy is denied.

If you are not satisfied with this response, you may appeal to the North Central Regional

Director, North Central Regional Office, 400 State Avenue, Tower II, Suite 800, Kansas

City, KS 66101. Your appeal must be received in the Regional Office within 20 days

from the date of this response.

S. Kallis, Warden                                    Date

APPENDIX Pg. 6

U.S. Department of Justice

Regional Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: __Tomkins, John P.__     __19421-424__     __Iowa-1__     __FCI-Pekin__
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A—REASON FOR APPEAL**

According to the Code of Federal Regulations, and as implemented by Program Statement 1542.06, prison "Library services shall ordinarily be available to all inmates daily, including evenings and weekends" 28 C.F.R. §544.100.

The inmate library at FCI-Pekin is never open on Friday evenings or at any time on Sundays. This is a clear violation of the Code of Federal Regulations and BOP policy. As such, I would ask that the staff at FCI-Pekin be directed to immediately begin opening the library on Friday evenings and for a minimum of three hours on Sundays.

_____        _____
      DATE                           SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____        _____
      DATE                           REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE             CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**

                                         CASE NUMBER: _____

APPENDIX Pg. 7

Return to: _____        _____        _____        _____
          LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

BP-230(13)
APRIL 1982

DATE                           SIGNATURE RECIPIENT OF REGIONAL APPEAL

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

---

**Administrative Remedy Number:** 969087-R1

---

This is in response to your Regional Administrative Remedy Appeal received in this office on April 12, 2019, in which you claim the library hours at FCI Pekin are in violation of policy and the Code of Federal Regulations. For relief, you request the staff be directed to immediately begin opening the library on Friday evenings and a minimum of three hours on Sundays.

We have reviewed your appeal and the Warden's response dated March 20, 2019. Program Statement 1542.06, Library Services, Inmate, states, "The library shall be open for a minimum of three hours daily and eight hours over weekends." Program Statement 1315.07, Legal Activities, Inmate, states, "The Warden shall make materials in the inmate law library available whenever practical, including evening and weekend hours." A review of FCI Pekin's Leisure and Law Library hours revealed it is open for a time commensurate with policy.

If you have an imminent court deadline, you are encouraged to speak with the Supervisor of Education to make appropriate arrangements for access to legal materials.

Based on the above information, your Regional Administrative Remedy Appeal is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534. Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

_5-9-19_
Date

_J. E. Krueger, Regional Director_

APPENDIX Pg. 8

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Tomkins, John P.     19421-424     Iowa-1     FCI-Pekin

         LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

**Part A - REASON FOR APPEAL**

As with the Warden's response, the Region's response conveniently ignores the portion of the Code of Federal Regulations that unequivocally states, "Library services shall ordinarily be available to all inmates daily including evenings and weekends" (emphasis added). 28 C.F.R. § 544.100. See also, Program Statement 1542.06(1)(quoting that exact phrase from the C.F.R.)

The fact that the library at FCI-Pekin is never open on Friday evenings or at any time on Sundays is clear violation of the Code of Federal Regulations. It is also a violation of the Bureau of Prisons' Program Statement.

As such, I would ask that the staff at FCI-Pekin be directed to immediately begin opening the library on Friday evenings and for a minimum of three hours on Sundays in accord with the regulation.

May 22, 2019

DATE                              SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____

DATE                              GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE           CASE NUMBER: _____

**Part C - RECEIPT**

APPENDIX Pg. 9        CASE NUMBER: _____

Return to: _____

       LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

_____

DATE            SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN      PRINTED ON RECYCLED PAPER                               BP-231(13)
JUNE 2002

**Administrative Remedy No. 969087-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy Appeal, wherein you claim FCI Pekin is not providing adequate access to the law library. For relief, you request the expansion of the hours of operation.

We have reviewed documentation relevant to your appeal and, based on the information gathered, concur with the manner in which the Warden and Regional Director addressed your concerns at the time of your Request for Administrative Remedy and subsequent appeal. Pursuant to Program Statement 1542.06, <u>Library Services, Inmate</u>, "Staff responsible for the inmate library are to ensure that the library offers daily library hours in proportion to inmate needs, with evening and weekend hours. The library shall be open for a minimum of three hours daily and eight hours over weekends." The library hours of operation at FMC Lexington meet the minimum hours required by policy.

Accordingly, this response is for informational purposes only.


7/31/19
_____
Date


Ian Connors, Administrator
National Inmate Appeals


APPENDIX Pg. 10



United States Department of Justice
Federal Bureau of Prisons
Federal Correctional Institution
Post Office Box 7000
2600 South Second Street
Pekin, Illinois 61555-7000

February 4, 2019

MEMORANDUM FOR INSTITUTIONAL STAFF AND INMATE POPULATION
FCI PEKIN, ILLINOIS

FROM:            A. Lamirand, Supervisor of Education

SUBJECT:         Library Hours

Effective February 25th, 2019 the Leisure and Law Library hours are as follows:

| FCI | Hours |
|---|---|
| Monday-Thursday | 0930-1130<br>0130-1530<br>1700-1930 |
| Friday | 0930-1130<br>0130-1530 |
| Saturday | 0730-1530 |
| Sunday and holiday | Closed |

| FPC | Hours |
|---|---|
| Daily | 0800-1545<br>1700-2045 |

APPENDIX Pg. 11

TOMKINS JOHN 19421424

# Notice to Inmates

## Library Schedule Change

**Effective Monday, February 25, 2019** Leisure and Law Library services will no longer be available to inmates between the hours of 7:30am-9:30am and 12:30pm-1:30pm. This change has been made in order to facilitate additional structured learning opportunities throughout the day while maintaining policy compliance in regard to required library hours (Program Statement 1542.06). Any inmate attempting to utilize the library during non-scheduled hours will be considered out of bounds and may receive an incident report.

**New Library Hours are as follows:**

Monday-Thursday: 9:30am-11:30am, 1:30pm-3:30pm, 5:00pm-7:30pm

Friday: 9:30am-11:30am, 1:30pm – 3:30pm

Saturday: 7:30am-3:30pm

APPENDIX Pg. 12

TOMKIN~ ...:..:...:..:.:. 19421424

2019 A . & O Handbook

Library Hours of Operation

| Days | Hours |
|------|-------|
| Monday – Thursday | 7:30 a.m. – 10:30 a.m.<br>12:30 p.m. – 3:30 p.m.<br>5:00 p.m. – 7:30 p.m. |
| Friday | 7:30 a.m. – 10:30 a.m.<br>12:30 p.m. – 3:30 p.m. |
| Saturday | 7:30 a.m. – 3:30 p.m. |

## RECREATION

The Recreation Department strives to provide you with a variety of satisfying and meaningful leisure experiences and skills. It is the goal of the Recreation Department to provide programs that will enable you to make constructive use of your free time and teach you new skills.

Scheduled activities will include sports, athletics, arts, crafts, music, and entertainment. New programs will be introduced as interest and participation warrant. Most programs and activities will be scheduled at a time when the majority of inmates are free from work assignments and are free to participate. Recreation programs and classes are voluntary.

As in Education classes, the Recreation classes are taught by a certified, competent instructor with a well-defined curriculum.

Our institution is fortunate to have a wide variety of recreational facilities that include recreation yards with basketball, handball, and volleyball courts, as well as softball fields and a soccer/flag football field. Some of the other equipment we have includes billiard tables, bumper pool tables, table tennis, and weight training equipment.

Recreation Hours of Operation

Leisure Center

| Monday through Friday | 8:30 a.m. – 3:30 p.m.<br>4:30 p.m. – 8:30 p.m. |
|------|-------|
| Weekends & Holidays | 7:30 a.m. – 9:30 a.m.<br>10:30 a.m. – 3:30 p.m.<br>4:30 p.m. – 8:30 p.m. |

Recreation Yard

| Monday through Friday | 6:30 a.m. – 3:30 p.m.<br>4:30 p.m. – dusk or 8:30 p.m. |
|------|-------|

45
APPENDIX TOMKINS, JOHN 19421424

⇔19421-424⇔
John Tomkins
#19421-424
Federal Correctional Institution
P.O. Box 5000
Pekin, IL 61555-5000
United States

Legal Mail

⇔19421-424⇔
Clerk Of The District Court
Room 309
100 NE Monroe ST
Peoria, IL 61602
United States

RECEIVED

JAN 2 7 2020

FCI PEKIN
MAIL ROOM